Good morning. May it please the Court, my name is Brent Plater. I am appearing on behalf of the Center for Biological Diversity in this matter. If I may, I'd like to reserve two minutes of my time for rebuttal. Thank you. Your Honor, this case and a portion of the companion case, Northwest Ecosystem Alliance v. Allen, presents the Court with a very interesting, I believe, and pressing question. That question is, what constitutes a protectable population under the Endangered Species Act? The government... Counsel, don't you have a very, very serious threshold issue of mootness? You asked for the listing, and you got it. What's there left to talk about? That's a good point, Your Honor. The appeal may be the controlling point. Well, there's a couple of points to raise on that issue. The argument we've raised in our brief is that this particular judgment continues to have collateral consequences against the Center for including the companion case, the Northwest Ecosystem Alliance case, and these decisions... I gather you'll be arguing in that case as well on those issues, which perhaps are more clearly reserved and presented there than they are here. Help us with the mootness question. You asked for a listing for the orca whale, and through the entire process, it was not clear for a while that you were going to get it, but in the end, you got it. End of case, no? I don't think it's quite that simple, Your Honor, and the reason that's the case is there's essentially two administrative records that were dealt with below with two separate Federal Register documents that were in question. One of them was the 12-month finding that dealt with the southern resident killer whale listing process. The second administrative record and the second Federal Register document dealt with the distinct population segment policy itself, and we've lost on that issue. The government continues to apply that population not only to the southern resident killer whales, but also by extension to other potential killer whale populations that may be... Where's the controversy in this case? What is the controversy that remains? You're having asked for a dangerous species listing and successfully obtained it. What's there less to talk about? Well, Your Honor, I believe that what the Ninth Circuit precedent states is that when the judgments that contain adverse aspects against a prevailing party, as the center was below... What could be adverse if you succeeded in your request? What's adverse is that the judgment expressly states that we have lost on a challenge to the applicability of the distinct population segment policy to Orcinus orca, the entire tax on which there are many populations that may or may not deserve endangered species status. Well, as I understand your argument, it's to the DPS categorization policy in general. Isn't that issue preserved in the next case? Potentially, but it's presented to the court in a way that would allow the court to avoid that question entirely. And of course, that case also deals with a separate defendant, Fish and Wildlife Service, rather than the National Marine Fisheries Service, and deals with separate issues. But the issues are very, very closely aligned. The distinct population segment policy itself was applied to both populations, but it's not just those species. It's the Cherry Point Herring, Kootenai River Bobbit, the Cactus Phrygianus pignale. These determinations that are being made that these last remaining populations in the determinist United States may not be entitled to protection anymore... ...or an adverse determination with respect to those other species. We would be able to waive that argument unless we have collateral consequences from the judgment below. But if the judgment is vacated in terms of the adverse consequences to you, doesn't that take care of that problem? I believe that could take care of the problem, your honor, that we faced previously. So long as the judgment was properly... I'm sorry, the vicature was properly tailored. So for example, at appeal now, the government is arguing that the entire judgment, including the judgment in our favor, should be vacated at this time, even though they haven't appealed the portions of the judgment that were adverse to them. It's fairly common practice for the Ninth Circuit to rebound or vacate portions of judgments. There's cases cited in our brief that discusses this. There's additional citations I can give you as well. But if the court were to vacate that portion of the judgment adverse to the center, dealing with the distinct population segment policy, of course there could be adverse consequences in subsequent legal proceedings to the center based on those particular judgments. But in addition to that, the Ninth Circuit is quite clear that that judgment is also appealable under, for example, in the Environmental Protection Information Center case versus Pacific Legal Foundation, which is cited in its brief. The Ninth Circuit has made very clear that if you can suffer adverse legal consequences, including estoppel arguments, which have already been presented against the center in other cases, that that alone constitutes an exception to the mootness doctrine and allows the Ninth Circuit to hear this case and issue, for example, declaratory relief, as was done in Biodiversity Legal Foundation, another case that we've cited in our matters. So I think there are alternative ways the court can deal with the mootness issue. Of course, the issue is preserved in the Northwest Ecosystem Alliance case, and I'd be happy to talk to you about the distinct population segment questions there as well in that case. Very fine, counsel. Let's hear from the government. Thank you, Your Honors. I may have pleased the court. Alice Thurston, on behalf of the National Marine Fisheries Service, I believe this case is fully moot and that no exceptions to mootness apply here. What about this argument that you all will try to use this case, the adverse DPS aspect of it, against the plaintiffs in other cases and indeed tried to? While this case has been an outstanding affirmative decision for the United States, we have reasonably relied upon it. Should this court vacate it, and we do not object to that, we cannot rely on a vacated decision. But so long as it's not vacated, you will rely on it. But I don't know that we will in light of the... You can't assure us that you won't. Well, I do believe that when this court renders a decision on the DPS policy, it will override whatever the district court said in this case, and we've said this in our brief. That assumes that we reach the issue in the companion case. As this case stands, the case that's currently before us, this case, they did raise the issue of the policy. They did raise the issue of the policy. And you, as you say, the government of Maine... Prevailed on it. Prevailed on that, and to the extent it remains as an unvacated aspect of the judgment, should we consider that they got their immediate relief, that would leave you free then to argue at your discretion that the DPS policy has already been determined. We are, as we said, we're not opposed to vacating this case. I actually do think the court will have to reach the DPS policy in the next case. It is fairly presented as one of two issues on appeal. And perhaps what we should do is to take both of these cases together. They're not consolidated, of course, but we could look at them together, perhaps try to decide them together. So as we reach a determination on DPS policy in the second case, in the squirrel case, we should perhaps have a look at the impact it might have with respect to anything that's left in this case. I would respectfully disagree. I think that in the lawn case, judgment did not issue until after the government was required to issue the decision that mooted the case. The district court retained judgment for the 12-month period in which it was requiring the government to reissue the 12-month determination. That's in this case. In this case. It became moot by subsequent. In other words, the case obviously wasn't moot in terms of the underlying order. But my point is that this goes to the partial vacateur argument as well. The government did not have the opportunity to appeal from the adverse portion of the decision before this court. So if this court were to reach only the decision raised by appellants, it would be unfair. That's the purpose of vacature in the mootness context. We are without remedy as well. I do say unfair, but it was the government that he opted to go ahead and list. Sir, it was not an election. We were required by the district court, and it retained jurisdiction, to issue a new 12-month finding. That the 12-month finding changed, and it changed in two different times, is a matter of the government doing its job in a thorough manner. And you're suggesting you couldn't have, you had to go ahead and do that. No, what I'm suggesting is that the action which mooted the case was the new 12-month finding that issued. I understand that, but you could have challenged, you could have opted to take that up on appeal, no? It would have had to have been, I think, a permissive appeal at that point because judgment hadn't issued until after we did that. So that we were really forced to make the mooting action by order of court prior to any judgment that we could have appealed at this point. For that reason, I submit vacature, partial vacature would be inequitable and inappropriate. I don't think any of the cases in the reply brief appellants have submitted support partial vacature at that point. Although they do support the idea of remanding with instructions. Perhaps we should just remand this case to the district court in light of the listing for its reconsideration of its prior judgment? I believe that would be in keeping with the Bonner-Mall conclusion, too. And again, the vacature, Bonner-Mall suggests remanding with instructions for vacature. This, that's- Maybe both of, both counsel are asking for that result, then? Well, I think the difference between us is that he's trying to preserve his victory in the district court that we were not able to appeal. But we're conceding that should this court find it moot, it should, the court is within its discretion to vacate it. We're not contesting that. We don't feel that there's any possibility of collateral legal consequences just to put that to bed. There are several cases cited from this court in the appellant's briefs. None of them actually applies the doctrine of collateral legal consequences in an analogous case. There has to be a more practical legal effect than merely saying the government can use a decision to argue it. We've been shot down on, on estoppel arguments in this, in the Squirrel case to follow. And, and I think that in this case, you have where the issue, as appellants say, the identical issue is squarely before the court in the subsequent case. There's not really any opportunity for, for this issue to escape review. All right. Thank you, counsel. If there's no further questions, I'll sit down and thank you, Your Honors. Thank you. Anything further? One more point, Your Honor. While it is true that the court below retained jurisdiction over the matter during the 12-month remand period, the government had the option at that point to move for entry of judgment under federal rules of civil procedure to get a judgment to appeal. They chose not to, instead chose to comply with the 12-month, the order the judge issued, and now claims that the entire order has to be vacated now that we've reached appeal. And our, our motion for entry of judgment was specifically presented to the lower court judge. The problem we faced of estoppel arguments in other cases was denied. All right. Thank you, counsel. The case just argued will be submitted for decision, and we'll hear argument in Northwest Ecosystem Alliance versus the Fish and Wildlife Service.
judges: Goodwin, O'scannlain, Fisher